IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANGELA M. BATES, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1405 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Nora Barry Fischer |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff Angela M. Bates ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the following reasons, the decision of the Administrative Law Judge is affirmed.

**II.     PROCEDURAL HISTORY**

Plaintiff protectively filed her application for DIB and SSI on January 19, 2006, alleging disability as of December 25, 2005. (R. at 16). On February 27, 2007, a hearing was held in Latrobe, Pennsylvania before an Administrative Law Judge. ("ALJ"). (R. at 16). Plaintiff, who was represented by counsel, appeared and testified at the hearing. (R. at 16). Mitchell Schmidt, a vocational expert, also testified. (R. at 16). On March 19, 2007, the ALJ issued a decision in which

he determined that Plaintiff was not "disabled" within the meaning of the Act. (R. at 26). The Appeals Council subsequently denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 6-8). Plaintiff now seeks review of that decision by this court.

### III. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 108 S.Ct. 2541, 2545 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to

engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions. *Baerga v. Richardson,* 500 F.2d 309, 312-13 (3d. Cir 1974). He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work

experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

If it is shown that the claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## IV.  DISCUSSION

Employing the five step sequential evaluation pursuant to 20 C.F.R. § 404.1520, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. at 18). At step two, the ALJ found Plaintiff to be suffering from the following "severe" impairments within the meaning of 20 C.F.R. §§404.1520(c) and 416.920(c): mood disorder, impulse control disorder, and a learning disorder. (R. at 18). At step three, the ALJ concluded that Plaintiff's impairments, although "severe", did not meet or medically equal the severity of any of the Listed Impairments enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations. (R. at 19). Proceeding to step four, pursuant to 20 C.F.R. § 404.1545, the ALJ made the following residual functional capacity assessment[1]:

> [t]he claimant has the residual functional capacity to perform work at all exertional levels but is limited to simple, routine, repetitive low-stress work that does not

---

[1] A claimant's residual functional capacity is a determination of what the claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1527(a)(2), 404.1545(a)(1), 416.927(a)(2), 416.945(a)(1).

involve deadlines or fast-paced production, is limited to object-oriented occupations, and is limited to occasional interaction with supervisors and coworkers and must avoid all interaction with the general public.

(R. at 19). The ALJ also determined that Plaintiff had never performed any "substantial gainful activity" under 20 C.F.R. §§ 404.1565 and 416.974, and therefore had no "past relevant work" of which to return. (R. at 24). Consequently, the SSA had the burden, at step five, to show that jobs exist in significant numbers in the national economy that the Plaintiff could perform. After considering the Plaintiff's age, impairments, education, lack of work experience, and functional capacity, along with Plaintiff's testimony and the impartial vocational expert's testimony, the ALJ determined that work activity "widely" exists in the national economy that Plaintiff could perform. (R. at 25). Due to the finding in step four that the Plaintiff did not have past relevant work, the ALJ found that transferability of job skills was not an issue to consider in his determination. (R. at 25). The ALJ further noted that Plaintiff has a high school education, and is literate and able to communicate in English. (R. at 24). Based on the foregoing, the ALJ found that Plaintiff was not "disabled" under Section 1614(a)(3)(A) of the Social Security Act. (R. at 26).

In support of her motion for summary judgment, Plaintiff raises the following arguments: (1) the ALJ failed to properly evaluate, and give appropriate weight to, Plaintiff's treating and examining medical resources; (2) the ALJ erred in determining that Plaintiff's testimony concerning her impairments and their impact on her work were not entirely credible; (3) the ALJ failed to properly consider the severity of Plaintiff's medical condition, and therefore, erred in his analysis at step three of his inquiry; and (4) the ALJ erred in his characterization of Plaintiff's residual functional capacity. (Docket No. 9 at p. 3). The Court will address each of Plaintiff's arguments, in turn.

**A. Medical Source Opinion**

Plaintiff argues that the opinion of her treating physician, Dr. Fred Schultz, should have been given controlling weight pursuant to 20 C.F.R. §§ 404.1527 and 416.927. (Docket No. 9 at p. 9). At the center of this issue is the large discrepancy between the Global Assessment of Functioning ("GAF")[2] scores assigned to Plaintiff by Dr. Schultz and those provided by the State agency and consulting psychologists. The record indicates that on May 30, 2006, Dr. Timothy Haslett, a consulting psychologist, assessed Plaintiff with a current GAF score of 68, which indicates moderate symptoms, and moderate difficulties in social and occupational functioning. (R. at 125). Conversely, on October 4, 2006, Dr. Schultz assessed Plaintiff with a current GAF score of 44, which indicates serious symptoms and impairments. (R. at 155).

Where an opinion by a medical source is not entitled to controlling weight, the following factors must be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527(d)(2). A medical opinion is also not entitled to controlling weight if it is "not supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in the case record..." 20 C.F.R. § 404.1527(d)(2). In the case at hand, the ALJ provided a thorough analysis of many of the factors listed above, culminating in a significant explanation as to why Dr. Schultz's opinion would not be provided controlling weight.

---

[2] The Global Assessment of Functioning is a numeric scale used by mental health physicians to rate the social, occupational, and psychological functioning of adults. See *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000).

The ALJ explained that no physician of record, other than Dr. Schultz, provided a medical source statement inconsistent with the ALJ's residual functioning capacity finding. (R. at 24). This is important because under the applicable regulations, the ALJ must consider whether a doctor's opinion is consistent with the record as a whole when determining the appropriate weight to assign that opinion. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence in the record, he may choose to credit the conflicting evidence and discredit the opinion of the treating physician. *Newhouse v. Heckler*, 753 F. 2d 283, 286 (3d Cir. 1985).

The ALJ noted that Dr. Haslett, a consulting psychologist,[3] concluded that Plaintiff's impairments created slight restrictions in her ability to understand, remember and carry out simple and detailed instructions, and make judgments on simple work-related decisions. (R. at 24, 126). Dr. Haslett also determined that Plaintiff's impairments created slight to moderate limitations on her ability to interact appropriately with the public, supervisors, and coworkers, and her ability to respond appropriately to work pressures or changes in a usual work setting. (R. at 20, 126).

Moreover, Dr. Haslett's findings are buttressed by the conclusions of Dr. Michelle Santilla, a state agency psychologist who reviewed Plaintiff's medical records. Dr. Santilla concluded that while the plaintiff was markedly limited in her ability to interact with the general public, Plaintiff was only moderately limited in her ability to: get along with coworkers; accept instructions and respond appropriately to criticism from supervisors; and, respond appropriately to changes in the

---

[3] Findings of fact made by State Agency medical and psychological consultants and other program physicians regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. *See* SSR 96-6p.

work setting. (R. at 129). Dr. Santilla also noted that Plaintiff was only moderately limited in her ability to perform activities within a schedule, to maintain regular attendance, and to make simple work-related decisions. (R. at 128). Notably, Dr. Santilla further concluded that Plaintiff was not significantly limited in her ability to sustain an ordinary routine without special supervision. (R. at 128). Taken together, the consistent findings of Dr. Santilla and Dr. Haslett support the determination by the ALJ that Dr. Schultz's medical source opinion is inconsistent with the record.

Despite the inconsistency of findings between Plaintiff's examining physician, Dr. Shultz, and the State consulting psychologists, Dr. Schultz's medical source opinion could be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" including clinical or objective findings to support his opinions. 20 C.F.R. § 404.1527(d)(2). Here, the ALJ determined Dr. Schultz failed to proved any clinical or objective findings to support his opinions, and this determination is supported by substantial evidence. (R. at 24). An examination of the record reveals that Dr. Schultz provided no treatment notes or clinical findings regarding his treatment of the Plaintiff and no results relating to any psychological testing performed.[4] (R. at 150-54, 158-74). Furthermore, when given the opportunity to explain any clinical or objective findings that led him to his conclusion on Plaintiff's mental status examination, Dr. Schultz wrote a single word, "anxious." (R. at 161). The lack of treatment notes, clinical findings, and other corroborating material supporting his medical source opinion supports the ALJ's

---

[4] It also should be noted that much of the information relating to Dr. Schultz's opinion is garnered from a series of check-box forms, two of which he was asked to fill out at the request of Plaintiff's counsel. The United States Court of Appeals for the Third Circuit has held that "form reports in which a physician's obligation is only to check a box or fill in a black are weak evidence at best." *Mason,* 994 F.2d at 1065.

finding that Dr. Schultz's opinion was not supported by medically acceptable diagnostic techniques and thus not entitled to controlling weight.

Plaintiff further argues that if Dr. Schultz's findings were in fact insufficiently supported by clinical findings, then the ALJ was under a duty to re-contact Dr. Schultz to "further investigate and clarify the nature and severity of her mental condition" before making a determination as to the weight to be afforded to Plaintiff's treating medical source. (Docket No. 9 at p. 11). In *Sims v. Apfel*, 530 U.S. 103, the United States Supreme Court noted that "Social Security proceedings are inquisitorial, not adversarial," and the ALJ has a duty "to investigate the facts and develop arguments both for and against granting benefits." *Id.* at 110-11. This duty, however, has typically been applied in cases in which a claimant is not represented by counsel.[5] *Livingston v. Califano,* 614 F.2d 342, 345-46 (3d. Cir 1980). As the Court of Appeals for the Tenth Circuit has stated, "although the ALJ has a duty to fully explore the facts, the ALJ does not act as counsel for the claimant." *Musgrave v. Sullivan*, 966 F.2d 1371, 1377 (10th Cir. 1992). In the case at bar, it is clear that the ALJ thoroughly examined the relevant facts presented to him, both for and against the Plaintiff's claim for disability benefits. (R. at 19-24). Furthermore, at the conclusion of the Plaintiff's hearing, the ALJ made it clear that he would not close the Plaintiff's file until he issued a written decision, giving the Plaintiff the option to provide any additional information that might impact her case. (R. at 226-27). Accordingly, Plaintiff's counsel was given ample opportunity to submit any additional evidence

---

[5] Plaintiff correctly points out that this duty exists even when a claimant is represented by counsel. (Docket No. 9 at p. 12). However, the plaintiff has the ultimate burden of producing sufficient evidence showing the existence of a disability. The ALJ does not have a burden to search through all of the relevant evidence available, as such a requirement would shift the burden of proof. *Hess v. Secretary of Health, Education and Welfare,* 497 F.2d 837, 840 (3d Cir. 1974).

at a later time. Having declined to submit any additional evidence that might bolster her case, Plaintiff cannot now escape, on appeal, the ALJ's decision by alleging the record was not fully developed.

Finally, Plaintiff argues that the ALJ erred by failing to provide an adequate explanation as to his determination that Plaintiff's treating medical source opinion would not to be afforded controlling weight. (Docket No. 9 at 12). Plaintiff suggests that the ALJ did not explain his decision declining to provide Dr. Schultz's opinion controlling weight and simply stated it was "an issue reserved to the commissioner." *Id.* Here, the ALJ pointed out that his determination regarding the amount of weight to be given to a medial source is "an issue reserved to the commissioner," after a thorough five-step analysis and discussion as to why Plaintiff's treating medical source opinion was not to be provided controlling weight. (R. at 24). The proposition that the ALJ failed to adequately explain this determination lacks merit.

**B. Plaintiff's Credibility**

Plaintiff next argues that the ALJ erred in his determination that Plaintiff's statements concerning the intensity, duration, and limiting effects of her symptoms[6] were not entirely credible. (Docket No. 9 at p. 3). Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints and did not provide a sufficient rationale for finding that her statements were not entirely credible. *Id.*

---

[6] The court notes that applicable law recognizes "a distinction between the issue of the existence of a medical condition and the issue of the existence of a statutory disability." *Kuzmin v. Schweiker,* 714 F.2d 1233, 1237 (3d Cir. 1983). In the instant case, it is clear throughout his opinion that the ALJ did not doubt that Plaintiff had a medical condition, but the question the ALJ was considering was whether that condition was disabling.

Credibility determinations pertaining to a claimant's testimony regarding her pain and limitations fall within the ALJ's province. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). Furthermore, a credibility determination made by the ALJ is entitled to great deference by the district court. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). However, this determination must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7; see also *Lang v. Barnhart*, No.Civ.A.05-1497, 2006 WL 3858579, at *10 (W.D. Pa. Dec. 6, 2006). Where a claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence. *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir. 1992).

In the instant case, when comparing the Plaintiff's testimony with the objective medical evidence, the ALJ found that while her medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, duration, and limiting effects of her symptoms were not entirely credible and were inconsistent with the totality of the evidence. (R. at 22). For example, the ALJ cited the medical report from consulting psychologist Dr. Haslett, who found that Plaintiff had a GAF score of 68, which indicates only moderate symptoms, and only a slight impairment in her abilities to understand, remember, and carry out both simple and detailed instructions, and to make simple work related decisions. (R. at 126). However, this report is contrary to the evidence submitted by Plaintiff at the hearing, as well as evidence in the record from Plaintiff's examining physician, Dr. Schultz, which, as previously noted, was not given controlling weight.

The ALJ also noted that although Plaintiff reported a history of violent aggression towards other persons and property, both at work and home, she had never been incarcerated, placed on probation, or required hospitalization or emergency room treatment. (R. at 22). It is also important to note that Plaintiff stopped taking Seroquel, a medication designed to help stabilize her mood, because it made her tired, and refused to take any other psychotropic medication that her examining physician has attempted to prescribe.[7] (R. at 153-55). The ALJ further noted that Plaintiff was undergoing outpatient treatment on a biweekly basis, and has never been referred to a partial hospitalization program or resided in a halfway house or another highly supportive living arrangement.[8] (R. at 23).

Under the applicable regulations, a plaintiff's daily activities are a valid factor to be considered by the ALJ when conducting an inquiry as to the reliability of the claimant's subjective complaints. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is not fully credible. *See Burns v. Barnhart*, 312 F.3d, 113, 129-130 (3d Cir. 2002). Even "limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible - the ALJ can choose to credit portions of

---

[7] Type and dosage of medication taken by a claimant to relieve symptoms is a proper credibility factor. SSR 96-7p. A failure to follow prescribed treatment without a good reason will result in a finding of not disabled. 20 C.F.R. § 404.1530. See also *Gross v. Hecker,* 785 F.2d 1163, 1166 (3d Cir. 2002) ("if a symptom can be reasonably controlled by medication, it is not disabling.")

[8] SSR 96-7p provides that an individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.

the existing evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

The ALJ determined that the Plaintiff's activities of daily living were also inconsistent with an individual who experiences totally debilitating symptomatology. (R. at 23). The ALJ cited Plaintiff's statements that she fed and cared for her two dogs, visited her mother, washed laundry, cleaned her house, prepared meals, and drove. (R. at 23). Plaintiff maintains that "more often than not, the plaintiff's activities of daily living consist of destroying something in her house, smashing windows, breaking doors, and having altercations with her neighbors." (Docket No. 9 at p. 5) The Court finds this contention unpersuasive.[9] Plaintiff's own statements indicate that her typical day consists of feeding her animals, seeing her mother, washing clothes and watching television. (R. at 56). Moreover, no treating or examining medical source has reported any limitations as to Plaintiff's activities of daily living and further, Plaintiff's treating psychiatrist noted that Plaintiff had only moderate restrictions of her daily living activities. (R. at 23). Such evidence further bolsters the ALJ's credibility determination.

Finally, the ALJ's determination of Plaintiff's credibility contains specific reasons for this finding, which are supported by the evidence in the case record. The ALJ provides a thorough explanation regarding Plaintiff's daily activities, medications and other treatments, and the contrary medical evidence provided by Dr. Haslett. (R. at 22-23). The ALJ cited, and explained, why this evidence is inconsistent with a finding of total disability preventing the Plaintiff from performing all work. *Id.* There is no indication in the record that the ALJ failed to consider Plaintiff's subjective

---

[9] The record indicates only one altercation with a neighbor. (R. 207). The record does not indicate that Plaintiff destroyed anything in her home, smashed windows, or broke doors on a daily, weekly, or even monthly basis.

complaints, despite not being fully confirmed by the medical evidence. The ALJ's explanation provides a substantial analysis as to why he found the Plaintiff's testimony not fully credible. After reviewing the ALJ's analysis against the record, the Court finds that the ALJ did not err in his credibility determination as said determination is supported by substantial evidence.

### C. Severity of Plaintiff's Medical Condition

Plaintiff claims the ALJ also erred in applications of the step three analysis because he failed to properly consider the severity of Plaintiff's medical condition, specifically because his finding of severity is contrary to the medical evidence provided by Plaintiff's treating medical source and subjective complaints. (Docket No. 9 at p. 13). In addition, Plaintiff argues that the ALJ failed to provide a sufficient explanation of the step three determination. *Id.*

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3d Cir. 1984) (emphasis added), quoting *Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir. 1993). Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount a claimant's pain without contrary medical evidence. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F. Supp. 648, 658 (W.D. Pa. 1998). Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present evidence to refute the claim. *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992), *cert. denied* 507 U.S. 924

(1993) (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)).

The ALJ found Plaintiff to be suffering from the following "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c):[10] mood disorder, impulse control disorder, and a learning disorder. (R. at 18). The ALJ noted that Plaintiff's impairments produced "more than a *de minimis* effect" on her ability to perform basic work related activities. *Id.* However, the ALJ concluded these impairments, considered alone and/or in combination, did not meet or medically equal any of the impairments presumed severe enough to render one disabled. (R. at 19).

In her brief, Plaintiff essentially lists many of the facts put forth in her testimony at the hearing, and the assessment of her treating physician, Dr. Schultz, urging the Court to find that these impairments do, in fact, meet or medically equal impairments severe enough[11] to render one disabled and unable to work. (Docket No. 9 at 14-15). This Court, however, may not undertake a de novo

---

[10]

A "severe" impairment is an impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities constitute the abilities and aptitudes necessary to do most jobs, such as:
>(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>(2) Capacities for seeing, hearing, and speaking;
>(3) Understanding, carrying out, and remembering simple instructions;
>(4) Use of judgment;
>(5) Responding appropriately to supervision, co-workers and usual work situations; and
>(6) Dealing with changes in a routine work setting.

20 C.F.R. §419.920(c).

[11]

*See* Listings 12.04 and 12.08 in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1525(f), 404.1526, 404 1526(b).

review in this manner. *Monsour,* 806 F.2d at 1190. Instead, this Court finds that substantial evidence exists in the record to deny controlling weight to Dr. Schultz's medical source opinion and to find the Plaintiff's testimony not entirely credible.

In step three of the analysis, the ALJ explained that he considered the medical evidence in the record, along with the fact that no treating or examining medical source stated that Plaintiff had an impairment or combination of impairments that would render her disabled under the regulations. (R. at 19). As additional support for his determination, the ALJ cited to the lack of limitations on Plaintiff's daily activities, the lack of any episode of decompensation, and the lack of evidence that Plaintiff had a chronic affective disorder of at least two years' duration that caused more than a minimal limitation in her ability to perform basic work activities. (R. at 19-21). Furthermore, the ALJ went through a step-by-step analysis of the relevant Listings in the regulations and described how the Plaintiff's impairments failed to meet or medically equal an impairment that would qualify her for disability benefits. (R. at 19-22). In his analysis, the ALJ referenced the contrary medical findings of the State Agency consultive psychologists as well as the opinions of Dr. Schultz. *Id.* Reviewing the same, this Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's impairments did not render her disabled.

### D. Residual Functional Capacity

The Plaintiff's final argument centers around the ALJ's assessment of Plaintiff's residual functional capacity and the question posed at Plaintiff's hearing to a vocational expert based on this assessment. (Docket No. 9 at pp. 3, 16). As noted above, the ALJ made the following residual functional capacity assessment:

> [t]he claimant has the residual functional capacity to perform work at

> all exertional levels but is limited to simple, routine, repetitive low-stress work that does not involve deadlines or fast-paced production, is limited to object-oriented occupations, and is limited to occasional interaction with supervisors and coworkers and must avoid all interaction with the general public.

(R. at 19). Based on this assessment, the ALJ asked the vocational expert, Mr. Schmidt, to assume the following hypothetical:

> [assume] somebody with the Claimant's age, education, training, and work experience [with] no exertional limitations. The work [they can perform], however, needs to be simple, routine, repetitive, low stress work meaning no deadlines or fast paced production, but it should be object oriented because there should be no public interaction with co-workers or supervisors. Assuming these limitations, are there any jobs that you can suggest?

(R. at 222). Based on this question, Mr. Schmidt testified that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.[12] (R. at 223).

Plaintiff first argues that the residual functional capacity assessment is not supported by substantial evidence. (Docket No. 9 at p. 3). This argument relies upon a finding that the ALJ erred when not assigning controlling weight to Dr. Schultz's medical source opinion and by finding that Plaintiff's testimony was not entirely credible. This court has already found that such argument fails.

Plaintiff next argues that the ALJ erred when presenting the above stated hypothetical question to the vocational expert who testified at Plaintiff's hearing. (Docket No. 9 at pp. 3, 17). The Court finds this argument also to be without merit. The hypothetical question posed by the ALJ to the vocational expert included all of the limitations supported by the record and indicated in the Plaintiff's residual functional capacity assessment. The only limitations not included were those

---

[12] A mold filler, box bender, or wire cutter are jobs that Mr. Schmidt cited as examples of work the Plaintiff could perform that exist in significant numbers in the national economy. (R. at 223).

17

limitations based on the findings of Plaintiff's medical source, Dr. Schultz. Furthermore, when posing a hypothetical question to a vocational expert, an ALJ may reject an alleged limitation if there is conflicting evidence on the record. *See Rutherford v. Barnhart*, 399 F.3d at 554-555. Here, there is substantial conflicting evidence on the record, as discussed in prior sections of this opinion, supporting the rejection of certain limitations to be posed in any hypothetical question directed to Mr. Schmidt.

Accordingly, the Court finds that the Commissioner's burden at step five of the sequential evaluation process has been satisfied, and the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence for purposes of 42 U.S.C. § 405(g).

## V. CONCLUSION

Based upon the evidence of record, the parties' cross motions and briefs outlining their arguments, and the supporting documents filed in support and in opposition thereto, this Court concludes that substantial evidence supports the ALJ's findings that Plaintiff was not statutorily disabled as of December 25, 2005. The decision of the ALJ denying Plaintiff's application for social security income and disability insurance benefits for that period of time is affirmed. An appropriate order follows.

*s/ Nora Barry Fisher*
Nora Barry Fischer
United States District Judge

Date:   April 7, 2008

cc:   All counsel of record.